CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 1 6 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VICTORIA KATENKAMP, | ) |
| | ) Civil Action No. 7:12CV00543 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) By:   Honorable Glen E. Conrad |
| | )        Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" as to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Victoria Katenkamp, was born on March 7, 1962, and eventually completed the twelfth grade in school. Plaintiff has worked primarily as a waitress. She last worked on a regular and sustained basis in 2008. On November 16, 2009, Ms. Katenkamp filed an application for a period of disability and disability insurance benefits. Plaintiff alleged that she became disabled for all forms of substantial gainful employment on November 15, 2008, due to fibromyalgia, depression, extreme pain, and possible cancerous lesions in vaginal area. She now maintains that she has remained disabled to the present time. The record reveals that Ms. Katenkamp met the insured status requirements of the Social Security Act through the fourth quarter of 2010, but not

thereafter. See generally 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before December 31, 2010. See generally 42 U.S.C. § 423(a).

Ms. Katenkamp's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated December 20, 2011, the Law Judge also determined that Ms. Katenkamp is not disabled. The Law Judge found that plaintiff suffers from severe impairments, including fibromyalgia, chronic knee discomfort, major depressive disorder, schizophrenia, generalized anxiety disorder with panic attacks, reading disorder, and episodic alcohol abuse. Because of these impairments, the Law Judge ruled that plaintiff was disabled for her past relevant work as a waitress. However, the Law Judge found that Ms. Katenkamp retained sufficient functional capacity for a limited range of light work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could no more than occasionally kneel; crawl; or climb ramps, stairs, ladders, ropes, and scaffolds. The claimant could have no more than moderate exposure to hazards and heights. The claimant was limited to simple, routine, repetitive, tasks within a low stress job with no decision-making, changes in work setting, production rate, or work pace.

(TR 15). Given such a residual functional capacity, and after considering Ms. Katenkamp's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge concluded that plaintiff retained sufficient functional capacity to perform several specific light work roles existing in significant number in the national economy at all relevant times prior to termination

of insured status. Accordingly, the Law Judge ultimately ruled that Ms. Katenkamp was not disabled, and that she is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was later adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Katenkamp has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. As found by the Administrative Law Judge, Ms. Katenkamp suffers from several definite physical impairments. However, without going into any great detail, the court believes that the Law Judge properly concluded that plaintiff's physical problems were not so severe as to have prevented performance of a limited range of light work activity, during the period prior to termination of insured status. The real problem in this case concerns Ms. Katenkamp's psychiatric difficulties.

As reflected above, when she applied for benefits in 2009, plaintiff cited depression as one of the conditions contributing to her disability. While a number of earlier reports from plaintiff's

3

treating physicians indicate that she did not complain of emotional symptoms, the medical notes reveal that Ms. Katenkamp began to make such complaints at the time of a medical visit on November 5, 2009. (TR 241). The Disability Determination Services referred Ms. Katenkamp for a psychological study on March 16, 2010. The psychologist, Dr. Marvin A. Gardner, Jr., diagnosed recurrent, moderate major depressive disorder; generalized anxiety disorder with panic attacks; reading disorder; and episodic alcohol abuse. (TR 260). While he noted marked impairment in plaintiff's concentration and moderate impairments in persistence and pace in the clinical setting, the court believes that the psychologist's report suggests residual functional capacity for some forms of work activity. (TR 259). About six months later, on September 9, 2010, Ms. Katenkamp began to see a psychiatrist at the Piedmont Community Services Clinic. She continued with the psychiatric treatment, with visits every four or five weeks. The psychiatrist, Dr. Nicholas Zeltvay, offered a working diagnosis of schizophrenia, probable disorganized type. (TR 262). He assessed plaintiff's GAF as between 40 to 45.[1] Shortly after the administrative hearing, the Social Security Administration commissioned a record review by Dr. Gary Bennett, a psychologist. The Administrative Law Judge interpreted Dr. Bennett's interrogatory responses so as to indicate that plaintiff does not suffer from an impairment listed under Appendix 1 to Subpart P of the Administrative Regulations Part 404.[2]

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

[2] If a claimant suffers from an impairment listed under Appendix 1, the claimant is deemed to be disabled for all forms of substantial gainful employment without reference to factors such as age, education, and prior work experience. See 20 C.F.R. § 404.1520(d).

The court concludes that the Law Judge's treatment of Dr. Bennett's report is not supported by substantial evidence. Furthermore, the court believes that Dr. Bennett's findings are inconsistent and that his conclusions are contradictory. Inasmuch as it remains unclear as to whether Ms. Katenkamp had developed a disabling psychiatric condition prior to the termination of insured status, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration.

From the face of Dr. Bennett's report, it is clear that the psychologist did not examine Ms. Katenkamp, and that the Social Security Administration solicited his comments in an attempt to assess the probative effect of the reports from the examining medical sources as to plaintiff's emotional condition and the work-related limitations associated therewith. Dr. Bennett noted diagnoses including major depressive disorder; generalized anxiety disorder; schizophrenia, disorganized type; and reading disorder. (TR 285). Based on the reports available for his review, Dr. Bennett undertook to evaluate Ms. Katenkamp's condition in terms of the various listings set forth under Rule 12.00 of Appendix 1 of the Administrative Regulations. Simply stated, Dr. Bennett's medical interrogatory responses are inconsistent. At one point, he stated that "the evidence does not establish listing levels of impairment." (TR 286). However, in a later interrogatory response, the psychologist produced findings which clearly indicate that the plaintiff meets a listed impairment under Rule 12.03C. (TR 288).

In his opinion, the Administrative Law Judge assessed Dr. Bennett's interrogatory responses as follows:

> Dr. Gary Bennett, Ph.D., evaluated some of the claimant's medical records on November 15, 2011. He opined that the claimant did not meet a listing level impairment but opined that her mental impairments would moderately interfere with

5

her activities of daily living; social functioning; and concentration, persistence, and pace. (Exhibit 8F at 3). This portion of his opinion is given great weight because it is consistent with medical evidence of record. He also opined that an increase in claimant's daily activities could cause her to decompensate. (Exhibit 8F at 5). This portion of his opinion is given little weight because it is inconsistent with the medical evidence of record, and it is unsupported. Additionally. Dr. Bennett did not personally examine the claimant, and he did not indicate that he had considered Dr. Gardner's evaluation and opinion, which is contrary to his own opinion.

(TR 17-18).

The court does not believe that certain of the Law Judge's comments in weighing Dr. Bennett's report are supported by substantial evidence. The Law Judge considered it worthy of note that Dr. Bennett had not personally examined Ms. Katenkamp. The court believes that this fact is of absolutely no consequence, since it was the Social Security Administration that referred plaintiff's case to Dr. Bennett for conduct of a record review and responses to pertinent interrogatories.[3] The only reasonable conclusion is that the Commissioner utilized Dr. Bennett to perform the functions contemplated under 20 C.F.R. § 404.1520(a) and 20 C.F.R. § 404.1526(c). In the court's experience, and as a practical matter, the Commissioner usually receives and considers reports from nonexamining physicians who conduct record reviews and offer opinions as to whether a claimant's condition meets or equals a listing under Appendix 1. Stated differently, the fact that Dr. Bennett did not actually see Ms. Katenkamp, provides no reason to discredit his opinion as to whether plaintiff's psychiatric impairments meet or equal a listing.

Likewise, the Law Judge's comment that Dr. Bennett did not indicate that he considered Dr. Gardner's evaluation is equally meaningless. On the very first page of his medical interrogatory, Dr.

---

[3] If the Law Judge believed that the record was incomplete, and that further examination by another mental health specialist was warranted, the Law Judge had full authority to require Ms. Katenkamp to submit to a new consultative examination. See 20 C.F.R. § 404.1519(a).

Bennett listed the diagnoses offered by Dr. Gardner, as well as Dr. Gardner's report (designated as Exhibit 5F), as matters he considered in making his evaluation. Once again, as a consultant utilized by the Social Security Administration, Disability Determination Services provided the record to Dr. Bennett that he was expected to review and assess. That record clearly included Dr. Gardner's earlier psychological report. While it is true that Dr. Bennett accorded greater significance to the later psychiatric findings of Dr. Zeltvay, the fact remains that Dr. Gardner had also reported that plaintiff's concentration was markedly impaired at the time of clinical examination. Thus, the court concludes that the Law Judge's observation that Dr. Gardner's evaluation and opinion are contrary to Dr. Bennett's evaluation and opinion constitutes an overly broad and misleading generalization.

When considered from a longitudinal perspective, this case does not appear to be overly complex. Based on the available medical records, it seems that Ms. Katenkamp did not complain of depression during the period in which she was first treated for medical problems. As reflected above, the first notation of complaints of depression, anxiety, and memory loss was on November 5, 2009. When she was seen by Dr. Gardner four months later, the psychologist diagnosed recurrent, moderate major depressive disorder with generalized anxiety disorder accompanied by panic attacks. Upon clinical examination, Dr. Gardner noted marked impairment in concentration, though he estimated no more than moderate work-related limitations in concentration, persistence, and pace. As of that day, the psychologist opined that plaintiff could perform simple and repetitive tasks and maintain regular attendance. (TR 259). However, at the time she was first seen by the psychiatrist six months later, Ms. Katenkamp was said to carry a diagnosis of schizophrenia, probably disorganized type. Dr. Zeltvay reported a GAF considerably below that found by Dr. Gardner six months earlier. When asked by the Social Security Administration to assess the meaning of the

medical findings and diagnoses documented in the record, Dr. Bennett reported that the evidence suggested that even minimal increase in mental demands or change of environment could be expected to cause Ms. Katenkamp to decompensate. Dr. Bennett concluded as follows:

> There is a consistent diagnosis of schizophrenia, Disorganized Type, in the treatment records from Piedmont (Exs 6f & 7f). The DSM-IV describes this subtype of schizophrenia to include an insidious onset along with a continuous course without significant remissions. This seems consistent with the evidence in this record. Ms. Katencamp [sic] appears capable of managing some daily activities but I would predict that an increase in mental demands could cause decompensation.

(TR 288). Such an assessment supports a finding of a listed impairment under Rule 12.03C of Appendix 1.

In summary, given the progression of the medical evidence in this case, the court believes that it is especially important to obtain a reliable and consistent medical assessment as to whether plaintiff's schizophrenia, and related disorders, are now so severe as to meet or equal a listed impairment.[4] Accordingly, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration. Upon remand, both sides will be allowed to present additional evidence and argument. If the Commissioner is unable to decide this case in plaintiff's favor based on the existing record, and with appropriate supplementation, the Commissioner will conduct a supplemental administrative hearing.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This /5th day of July, 2013.

                                                                        Chief United States District Judge

---

[4] If plaintiff's condition does meet or equal a listing, it will also be necessary to determine whether the conditions met the durational requirements of the Act. It will also be necessary to determine whether the condition rendered plaintiff totally disabled prior to the termination of insured status.